IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NATHAN H.,[1]

      Plaintiff,

v.                                              1:23-cv-00756-JMR

MARTIN O'MALLEY,[2] Commissioner
of the Social Security Administration,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Nathan H.'s Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 19), which was fully briefed on April 3, 2024. Docs. 24–26. The parties consented to my entering final judgment in this case pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. Doc. 11. Having meticulously reviewed the record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to properly articulate why he found rheumatologist Dr. Maheswari Muruganandam's opinions unpersuasive. I therefore GRANT plaintiff's motion and remand this case to the Commissioner for further proceedings.

---

[1] Due to sensitive personal and medical information contained in this opinion, the Court uses only plaintiff's first name and last initial. In so doing, the Court balances the plaintiff's privacy interest in his personal medical information, *United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015), and the public's interest in accessing the opinion. *See* FED. R. CIV. P. 5.2(c)(2)(B).

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

I.      **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

_____

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)

(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.      Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-

step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S.

137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the

claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected

to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of

presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past

relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at

1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but

proves that he or she is unable to perform his or her "past relevant work," the burden of proof

shifts to the Commissioner, at step five, to show that the claimant is able to perform other work

in the national economy, considering the claimant's residual functional capacity ("RFC"), age,

education, and work experience. *Id.*

---

[4] Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.

III.    **Background and Procedural History**

Plaintiff was born in 1970. AR 307.[5] He dropped out of high school, but eventually went back to school and graduated from an alternative high school. AR 79, 377. He previously worked as a custodian for a horse racing track and as a construction worker. AR 68–70, 377. On October 7, 2019, plaintiff filed an application for Disability Insurance Benefits ("DIB"), and on November 18, 2019, he filed an application for Supplemental Security Income ("SSI").[6] AR 307–313, 325–330. Plaintiff alleged that he had been disabled since October 15, 2015, due to arthritis, post-traumatic stress disorder, diabetes, high blood pressure, and high cholesterol. AR 307, 325, 376. The Social Security Administration ("SSA") denied his claims initially on April 7, 2020. AR 151–58. The SSA also denied his claim for reconsideration on April 26, 2021. AR 164–67. Plaintiff requested a hearing before an ALJ.[7] AR 169–70. On December 7, 2022, ALJ Michael Leppala held a hearing. AR 63–90. ALJ Leppala issued a "Partially Favorable" decision on January 16, 2023. AR 14–39. Therein, the ALJ found that plaintiff was disabled beginning on July 25, 2021—but not between October 15, 2015 and July 24, 2021. *Id.*

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. AR 19.

At step one of the Sequential Evaluation Process, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 15, 2015, his alleged onset date. *Id.* At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus,

[5] Documents 13-1 through 13-11 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court generally cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[6] The ALJ listed the protective filing date for both applications as October 7, 2019. AR 17.

[7] A hearing was initially set for January 11, 2022, but ALJ John Loughlin postponed it so that plaintiff could find legal counsel. AR 50–62.

inflammatory arthritis, annular fissures of the lumbar spine, left paracentral small disc protrusion at the L5-S1 level, degenerative changes in the thoracic spine with anterior and right-sided osteophytes, depressive disorder, post-traumatic stress disorder, and mild neurocognitive disorder. AR 20. The ALJ found that plaintiff's obesity, hypertension, and hyperlipidemia are nonsevere impairments. *Id.*

At step three, the ALJ found that none of plaintiff's impairments, alone or in combination, met or medically equaled a Listing.[8] AR 20–23. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed plaintiff's RFC. AR 24–33.

### A.  Before July 25, 2021

Before July 25, 2021, the ALJ found that plaintiff had the following RFC:

[T]he Claimant is capable of occasional lifting and/or carrying 20 pounds; frequent lifting and/or carrying 10 pounds; and sitting, and standing and/or walking for about six hours in an eight-hour workday, all with normal breaks. (20 CFR 404.1567(b) and 416.967(b)[)]. The Claimant is further limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, stooping, kneeling, crouching, and crawling. The Claimant can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with occasional changes in work setting, maintain concentration persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. The Claimant is limited to occasional interaction with coworkers, supervisors, and the general public.

AR 24.

At step four, prior to July 25, 2021, the ALJ found that plaintiff was capable of performing his past relevant work as a "housekeeping cleaner." AR 33. Alternatively, the ALJ found plaintiff not disabled at step five because he could perform jobs that exist in significant

---

[8] The ALJ appears to have made a scrivener's error by stating that the "Claimant does meet Listing 1.15," as opposed to "Claimant does **not** meet Listing 1.15." AR 21. Neither party argues that the plaintiff met Listing 1.15. As the ALJ went on to assign plaintiff an RFC, the ALJ clearly did not find that plaintiff's impairments met Listing 1.15.

numbers in the national economy, including "Sandwich-Board Carrier (DOT 299.687-014)" and

"Poultry Boner (DOT 525.687-066)." AR 34–35.

### B. Beginning on July 25, 2021

Beginning on July 25, 2021, the ALJ found that plaintiff had the following RFC:

[T]he Claimant is capable of occasional lifting and/or carrying 10 pounds; frequent lifting and/or carrying less than 10 pounds; sitting for about six hours in an eight[-]hour workday; and standing and/or walking for about two hours in an eight-hour workday, all with normal breaks. (20 CFR 404.1567(b) and 416.967(b)[)]. The Claimant is further limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, stooping, kneeling, crouching, and crawling. The Claimant can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with occasional changes in work setting, maintain concentration[,] persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. The Claimant is limited to occasional interaction with coworkers, supervisors, and the general public.

AR 35.[9]

At step four, beginning on July 25, 2021, the ALJ found that plaintiff could no longer

perform his past relevant work. AR 38. At step five the ALJ found that "there [we]re no jobs that

exist in significant numbers in the national economy that" plaintiff could perform. *Id.* Therefore,

the ALJ found that plaintiff was disabled beginning on July 25, 2021. *Id.*

Plaintiff requested review by the Appeals Council of the unfavorable portion of the ALJ's

decision—which found him not disabled between October 15, 2015 and July 24, 2021. AR 304–

06. On July 11, 2023, the Appeals Council denied the request. AR 1–6. Plaintiff filed a timely[10]

appeal to this Court on September 6, 2023. Doc. 1.

---

[9] The only differences in plaintiff's RFCs before and after July 25, 2021 are that "occasional lifting and/or carrying 20 pounds" was reduced to "10 pounds," and that "standing and/or walking for about six hours in an eight-hour workday" was lowered to "two hours in an eight-hour workday." AR 24, 35.

[10] A claimant has sixty days to file an appeal. The sixty days begin running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2.

## IV.     Plaintiff's Claims

Plaintiff argues that the ALJ erred by finding him not disabled prior to July 25, 2021.

Doc. 19. He argues that the ALJ made three reversible errors:

(1) The ALJ improperly relied on the inconsistent opinion of non-examining consultant, Meagan Parmley, Ph.D.;

(2) The ALJ failed to properly assess the opinion of treating physician Maheswari Muruganandam, M.D.—in general and for the time period prior to the established onset date of July 25, 2021; and

(3) The ALJ failed to properly assess the opinion of treating provider Brandy Hartman, CNP—in general and for the time period prior to the established onset date of July 25, 2021.

*Id.* at 5–27.

The Court remands based on plaintiff's second argument. More specifically, the ALJ

failed to properly articulate his rejection of Dr. Muruganandam's opinions. *See infra* § VI. The

Court does not address the other arguments as they "may be affected by the ALJ's treatment of

this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V.     Dr. Muruganandam's Opinions

Dr. Muruganandam—plaintiff's rheumatologist—completed two short forms titled

Medical Assessment of Ability to do Work-Related Activities, one for physical and one for non-

physical activities. AR 1687–88. She signed both forms on February 16, 2022. *Id.* Therein, Dr.

Muruganandam assessed plaintiff's capacities starting "one year prior to initial visit through

current examination." *Id.* Dr. Muruganandam's first visit with plaintiff was on February 13,

2020. AR 877. Thus, the doctor's opinions were retrospective to February 13, 2019. AR 1687–

88. On the forms, Dr. Muruganandam opined that plaintiff could:

- Occasionally lift and/or carry ten pounds;
- Frequently lift and/or carry five pounds;
- Stand or walk less than two hours in an 8-hour workday;
- Sit for less than two hours in an 8-hour workday;

7

- Occasionally operate foot controls bilaterally;
- Occasionally reach overhead and at or below shoulder level bilaterally;
- Occasionally handle, finger, push and pull bilaterally; and
- Less than occasionally kneel, stoop, crouch, and crawl.

AR 1687. Dr. Muruganandam found the following non-physical work limitations due to

plaintiff's pain and/or fatigue:

- Marked limitation in ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without unreasonable number and length of rest periods;
- Moderate limitation in ability to maintain attention and concentration for extended periods (i.e. 2-hour segments) without distraction; and
- Moderate limitation in ability to maintain regular attendance and be punctual within customary tolerance.

AR 1688. Dr. Muruganandam further noted that the "[p]atient has inflammation in his joints

which is aggravated by any prolonged or extended period as it causes stress in the joint, which

causes more pain with swelling. If he is not limiting his work, he might have chronic

deformities." *Id.* Dr. Muruganandam opined that plaintiff was markedly more limited than the

ALJ found him to be prior to July 25, 2021—the ALJ's established disability onset date.[11]

---

[11] The ALJ stated that he chose this date based on a telephonic appointment Dr. Muruganandam had with plaintiff on July 26, 2021. AR 35–36. At this appointment, Dr. Muruganandam prescribed methotrexate to plaintiff for his severe joint pain. 1669–71. Notably, Dr. Muruganandam wanted plaintiff to start methotrexate at his March 10, 2021 appointment. AR 1671–72. However, plaintiff had difficulties obtaining the necessary prerequisite tuberculosis test to begin taking the medication. AR 1669–71.

At the July 26, 2021 appointment, plaintiff also reported that "his pain and swelling" were "getting worse," AR 1669, which is not unlike he had reported in previous appointments with various healthcare providers. *See, e.g.*, AR 1499 (October 20, 2020 appointment with CNP Brandy Hartman for arthritis: "It occurs persistently. The problem is worsening. . . [M]edication is not helping. . . ."); AR 1520 (August 18, 2020 appointment with Dr. Frances Chavez for joint pain: "Severity level is incapacitating. It occurs constantly and is worsening."); AR 1532 (May 4, 2020 appointment with Dr. Frances Chavez for joint pain: "Severity level is incapacitating. It occurs constantly and is worsening.").

In reviewing Dr. Muruganandam's opinions, the ALJ found that they were "generally unpersuasive." AR 37.

## VI.    Analysis

Plaintiff argues that the ALJ failed to properly assess Dr. Muruganandam's opinions both in general and for the time period prior to July 25, 2021. Doc. 19 at 11–21. The Commissioner asserts that the ALJ complied with the SSA's articulation requirement when discussing Dr. Muruganandam's opinions. Doc. 24 at 13–20.

As explained below, the ALJ failed to apply the correct legal standards when articulating why he found Dr. Muruganandam's opinions unpersuasive. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[The ALJ] will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions. . . .").

### A.  Applicable Law

Plaintiff filed his applications for DIB and SSI in 2019. AR 307–30. Thus, the substantially revised regulations, adopted March 27, 2017, apply to his claims. The revised rules pertaining to medical opinions require the SSA to evaluate and articulate the persuasiveness of the medical opinions. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

In evaluating the persuasiveness of medical opinions, the SSA considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that support or contradict a medical opinion or finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An ALJ is always required to explain how he or she considered the first two factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *2 (10th

Cir. 2022) (unpublished) ("An ALJ must explain how he or she considered the supportability and consistency factors.") (citation and quotation omitted). The ALJ is only required to explain how he or she considered the other three factors if differing medical opinions are equally well-supported and consistent with the record. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

As the Tenth Circuit explained,

"[s]upportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." [20 C.F.R.] § 404.1520c(c)(1); *id.* § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Id.* § 404.1520c(c)(2); *id.* § 416.920c(c)(2).

*Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. Jul. 6, 2021) (unpublished) (brackets and ellipses omitted).

While the revised regulations allow the ALJ some discretion in how he articulates his findings on the persuasive value of medical opinion evidence, it provides no leeway as to whether he articulates such findings. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b); (The ALJ "will articulate . . . how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record). In addition, "all [of] the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings." *Grogan*, 399 F.3d at 1262 (citations and quotation marks omitted). The ALJ's decision must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (quotation omitted).

Judges in this district have found bare conclusions regarding the persuasiveness of a medical opinion insufficient.

> [A] bare conclusion regarding the persuasiveness of a medical opinion does not suffice under 20 C.F.R. § 404.1520c. An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical source's opinions. *See id.* § 404.1520c. Although the regulation does not prescribe the depth with which an ALJ must discuss the factors of supportability and consistency, the explanation must at least eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . .

*Zambrano v. Kijakazi*, No. 20cv1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022) (quotation, alterations, and citation omitted); *see also Frazer v. Kijakazi*, No. 20cv1147 GBW, 2022 WL 682661, at *6 (D.N.M. Mar. 8, 2022) ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand."); and *Klein v. Kijakazi*, No. 20cv1199 LF, 2022 WL 2827582, at *7 (D.N.M. Jul. 20, 2022) (ALJ finding an opinion "somewhat persuasive" without any explanation is not legally sufficient).

## B. The ALJ's Assessment of Dr. Muruganandam's Opinions

When discussing how persuasive the ALJ found Dr. Muruganandam's opinions, the ALJ stated:

> Throughout the entire period of adjudication, I find Dr. Muruganandam's opinion generally unpersuasive. In particular, this opinion was mostly provided using a standard checkbox form, with little explanation of each assessed limitation. Moreover, there is no support the Claimant cannot sit more than two hours and would have reaching, handling and fingering limitations. For example, examinations, including from Dr. Muruganandam, were unremarkable or reflected the Claimant had a normal gait, decreased range of motion of the lumbar spine, elbows and knees, and normal strength of 5/5 throughout. (Exs. 1F/4, 5F/30, 37-38 and 68, 6F/97 and 200, 9F/2 and 15, and 10F/37, 87 and 111). Prior to established onset date, these findings would support an ability to perform light work. After the established onset, the Claimant had a worsening of symptomology and objective findings of deficits to his gait. (Ex. 15F/42). These objective findings would not support the severe limitations opined by Dr. Muruganandam but rather, they can be accommodated by sedentary work.

AR 37. As discussed below, this discussion is legally insufficient because the ALJ did not adequately discuss the supportability or consistency of Dr. Muruganandam's opinions. *Infra* § VI.d–e.

### C. The ALJ's citations to record evidence are nonsensical.

To explain why the ALJ's discussion of persuasiveness was insufficient, it is first necessary to understand that the ALJ's citations to the record do not make sense. An ALJ may not "mischaracterize or downplay evidence to support [his] findings." *Bryant v. Soc. Sec. Admin.*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987)). Here, the ALJ significantly mischaracterized each of the records that he cited.[12]

The ALJ cited twelve pages of the record to show that "there is no support [for Dr. Muruganandam's opinions that] the Claimant cannot sit more than two hours and would have reaching, handling and fingering limitations." AR 37 (citing Exhs. 1F/4, 5F/30, 37-38 and 68, 6F/97 and 200, 9F/2 and 15, and 10F/37, 87 and 111). Specifically, the ALJ used these citations to demonstrate that, "examinations, including from Dr. Muruganandam, were unremarkable or reflected the Claimant had a normal gait, decreased range of motion of the lumbar spine, elbows and knees, and normal strength of 5/5 throughout." *Id.* The cited records make no such showing.

To begin, exhibit 6F/200 does not exist. Exhibit 6F only has 125 pages. *See* AR 742–866. Further, after reviewing the record, the ALJ's citation to exhibit 6F/200 does not appear to be a typographical error.

---

[12] Plaintiff argues that the ALJ "cherry-picked" records to show that Dr. Muruganandam's opinions were unsupported. Doc. 19 at 17–18. However, the ALJ's errors in citing the record go well beyond cherry-picking and fail to support his conclusions.

Next, five of the cited records are not from the relevant time period. *See* Exhs. 1F/4, 5F/30, 37–38, 68 (respectively, AR 550, 696, 703–04, 734). Dr. Muruganandam assessed plaintiff's capacities from February 19, 2019, through February 16, 2022. AR 1687–88. Yet, exhibits 1F/4, 5F/30, 37–38 and 68 are all records from before February 19, 2019. AR 550, 696, 703–04, 734. As the ALJ recognized, plaintiff has a joint condition and pain, which progressively worsened over time. AR 27. Therefore, absent explanation, select records from before February 19, 2019, showing that plaintiff was doing moderately better, do not contradict Dr. Muruganandam's opinions about plaintiff's condition after February 19, 2019. The ALJ provided no explanation as to how these five records controvert Dr. Muruganandam's opinions. *See Varga v. Clovin*, 794 F.3d 809, 813 (7th Cir. 2015) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions.") (citation omitted).

As for the six remaining citations (Exhs. 6F/97, 9F/2 and 15, 10F/37, 87, and 111), the cited pages do not support the propositions for which the ALJ cited them. *See* Exhs. 6F/97, 9F/2 and 15, 10F/37, 87 and 111 (respectively, AR 838, 878, 891, 969, 1019, 1043). In his response, the Commissioner argues that the ALJ made two typographical errors by citing exhibits "10F/37" instead of "9F/37" and "10F/111" instead of "10F/115."[13] Doc. 24 at 18–19.

---

[13] The Commissioner explains that the ALJ made these exact same errors earlier in his opinion when describing these medical appointments. Doc. 24 at 18–19. Plaintiff calls the Commissioner's explanation a post-hoc rationalization to justify the ALJ's findings. Doc. 25 at 8, n.5 (citing *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) (Courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.")). It is unnecessary to determine whether the ALJ made such errors because, even accepting the Commissioner's argument, the matter must be remanded. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (non-dispositive scrivener's error did not affect outcome of the case).

Accepting, for argument's sake, that the ALJ did make such errors, exhibits 9F/37 and 10F/115 also do not support the ALJ's propositions. *See* Exhs. 9F/37, 10F/115 (AR 913, 1047).

The ALJ stated that physical examinations reflected that plaintiff had a "normal gait." AR 37. However, the six remaining record citations do not mention plaintiff's gait. *See* Exhs. 6F/97, 9F/2 and 15, 10F/37, 87, and 111. Neither do exhibits 9F/37 and 10F/115.

The ALJ also stated that examinations reflected that plaintiff had a "decreased range of motion of the lumbar spine, elbows, and knees." AR 37. Again, none of the six remaining record citations mention plaintiff's range of motion in his lumbar spine, elbow, or knees. *See* Exhs. 6F/97, 9F/2 and 15, 10F/37, 87, and 111. Neither do exhibits 9F/37 or 10F/115.

The ALJ added that the examinations reflected that plaintiff had a "normal strength of 5/5 throughout." AR 37. Yet again, nowhere in the six remaining record citations does it state that plaintiff had a "normal strength of 5/5 throughout." *See* Exhs. 6F/97, 9F/2 and 15, 10F/37, 87, and 111. Neither do exhibits 9F/37 or 10F/115.

Finally, the ALJ stated that the "examinations, including from Dr. Muruganandam, were unremarkable." AR 37. However, only two of the remaining cited pages reflect examinations at all. *See* Exhs. 9F/2 and 15. One of these two examinations was not "unremarkable" as it noted "[t]enderness present in the L1-L2 lumbar region" and an "elevated" C-reactive protein (CRP) test, indicative of inflammation. Exh. 9F/2. The other four remaining cited records do not show any examinations at all. *See* Exhs. 6F/97, 10F/37, 87, and 111. Neither do exhibits 9F/37 or 10F/115.

In sum, the records the ALJ cited to explain why he found Dr. Muruganandam's opinions unpersuasive are non-sequiturs. The ALJ's citations are just shy of random.

### D.  In light of the ALJ's arbitrary record citations, he does not adequately discuss the supportability of Dr. Muruganandam's opinions.

The ALJ did not sufficiently discuss whether Dr. Muruganandam's opinions were supported. An ALJ is required to discuss how he considered the supportability of an opinion. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Nielsen*, 2022 WL 15570650, *2. Failing to meet the articulation requirements is a legal error. *C.f. Watkins*, 350 F.3d at 1301 ("We cannot simply presume the ALJ applied the correct legal standards in considering [a doctor's] opinion."); *see also Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 908–09 (E.D. Mich. 2021) (unpublished) (remanding for failure to discuss supportability and consistency of medical opinion) ("faithful adherence to the 'articulation' requirement of the new regulations is vital to maintaining the guarantee of the rule of law"); *Donna P. v. O'Malley*, No. 21-cv-03769, 2024 WL 361132 (N.D. Ill. Jan. 31, 2024) (remanding based on the same); *Ortega v. Kijakazi*, No. 2:22-0322 KRS, 2023 WL 1818369 (D.N.M. Feb. 8, 2023) (remanding based on the same).

The ALJ criticized Dr. Muruganandam's opinions stating, "there is no support [that] the Claimant cannot sit more than two hours and would have reaching, handling and fingering limitations." AR 37. Then, the ALJ stated: "For example, examinations, including from Dr. Muruganandam, were unremarkable or reflected the Claimant had a normal gait, decreased range of motion of the lumbar spine, elbows and knees, and normal strength of 5/5 throughout. (Exs. 1F/4, 5F/30, 37-38 and 68, 6F/97 and 200, 9F/2 and 15, and 10F/37, 87 and 111)." *Id.* But, as discussed above, this string citation is nonsensical. Therefore, the sentence the citation supports is not grounded in the record. Without that explanatory sentence, the Court is left with the bare conclusion that "there is no support the Claimant cannot sit more than two hours and would have reaching, handling and fingering limitations." *See id.* A bare conclusion as to supportability is

legally insufficient. *See Zambrano*, 2022 WL 1746765, at *5 ("An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical source's opinions.").

Moreover, the ALJ completely omits reference to Dr. Muruganandam's opinions that plaintiff had a "[m]arked limitation in ability to complete a normal workday and workweek," "[m]oderate limitation in ability to maintain attention and concentration for extended periods," and "[m]oderate limitation in ability to maintain regular attendance and be punctual." AR 1688. He also does not discuss Dr. Muruganandam's explanation that plaintiff "has inflammation in his joints which is aggravated by any prolonged or extended period as it causes stress in the joint, which causes more pain with swelling. If he is not limiting his work, he might have chronic deformities." *Id.*; *see Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

The ALJ's only remaining basis for rejecting Dr. Muruganandam's opinions is legally insufficient. The ALJ criticized Dr. Muruganandam's opinion "[i]n particular," because it was "mostly provided using a standard checkbox form, with little explanation of each assessed limitation." AR 37. Such criticism cannot form the sole basis for discounting Dr. Muruganandam's opinions. *See Andersen v. Astrue*, 319 F. App'x 712, 723–24 (10th Cir. 2009) (unpublished).[14] Much like in this case, in *Andersen*, the ALJ criticized two treating physicians'

---

[14] This rule—that an ALJ cannot reject a treating physician's opinion solely because it was given on a check box form—was developed under the prior social security regulations. *See Andersen*, 319 F. App'x at 722. However, I am persuaded by the reasoning of other judges in this district who have held that:

opinions because they "used forms with check off boxes and little reasoning was articulated on the forms." *Andersen*, 319 F. App'x at 723. And just like in *Andersen*, the use of these forms—which "did not ask for extensive rationales, or provide significant space for them,"—"does not provide a sound foundation for the inference . . . that [the treating physicians'] assessments were of limited reliability." *Id.* at 724. Plaintiff argues, and the Court agrees, that while "Dr. Muruganandam provided limited clinical comments on the forms, her own treatment notes supported the forms . . . ."[15] Doc. 19 at 16*; see also Andersen*, 319 F. App'x at 724 (noting as a factor that "there were other materials that could lend support to the conclusions in the" physicians' check box forms). Dr. Muruganandam's opinions cannot be discounted solely because they were given on a check box form. *See also Trujillo*, 2022 WL 3908782, at *6 (finding the same). This criticism alone would not amount to reversible error so long as the ALJ's rejection of Dr. Muruganandam's opinions was otherwise supported. *See Peck v.*

---

[S]upportability is not a new factor. It is the same supportability factor that ALJs have long considered under the treating physician rule. Therefore, caselaw about the supportability of medical opinions under the treating physician rule applies to the supportability of such opinions under [the new regulations].

*Lobato v. Kijakzi*, No. 21-207 JB/KK, 2022 WL 500395, at *11–12 (D.N.M. Feb. 18, 2022) (Khalsa, J.) (quoting *Kosea v. Kijakazi*, No. 20-307 WJ/GBW, 2021 WL 3913051, at *8 (D.N.M. Sept. 1, 2021) (Wormuth, J.)); *Trujillo v. Kijakzi*, No. 1:21-cv-0074-LF, 2022 WL 3908782, at *6, n.11 (D.N.M. Aug. 30, 2022) (Fashing, J.) (citation omitted); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, at 5,857 (Jan. 18, 2017) (Supportability and consistency under the new regulations "are the same factors we look to as part of the current treating source rule.").

[15] "The supportability analysis looks at whether the medical source's opinions are supported by the source's own notes, diagnoses, and explanations." *J.T.L. v. Kijakazi*, No. 22-cv-02343-NYW, 2023 WL 5017241, at *4 (D. Colo. Aug. 7, 2023) (citing *Crystal R. E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022)); *see also Lobato*, 2022 WL 500395, at *12 (explaining in more detail why supportability looks to "evidence and explanations [the physician] generated for purposes such as diagnosis and treatment," not just "evidence and explanations presented by a source in order to support his or her opinions.").

*Barnhart*, 214 F. App'x 730, 738 (10th Cir. 2006) (affirming the ALJ's rejection of a physician's check-box opinion when the ALJ provided "specific and legitimate reasons for rejecting the opinion"). However, as noted above, the ALJ did not provide other "legitimate reasons" for discounting Dr. Muruganandam's opinions.

The ALJ failed to sufficiently articulate whether Dr. Muruganandam's opinions were supported. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Therefore, the ALJ did not "provide this court with a sufficient basis to determine that" the correct legal standards were applied. *See Jensen*, 436 F.3d at 1165.

**E.   The ALJ does not address the consistency of Dr. Muruganandam's opinions.**

The ALJ failed to adequately assess whether Dr. Muruganandam's opinions were consistent. When addressing the persuasiveness of a medical opinion, the ALJ must address the consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Nielsen*, 2022 WL 15570650 at \*2. As with supportability, failure to address consistency is a legal error. *C.f. Watkins*, 350 F.3d at 1301 ("We cannot simply presume the ALJ applied the correct legal standards in considering [a doctor's] opinion."). As a bare conclusion regarding consistency is insufficient, the complete omission of a consistency analysis is surely error. *See Frazer*, 2022 WL 682661, at \*6.

The Court is not convinced that the ALJ discussed the consistency of Dr. Muruganandam's opinions at all. Notably, the ALJ did not use the word "consistency" when discussing Dr. Muruganandam's opinions nor did he meaningfully compare the opinions to record evidence. *See Zhu*, 2021 WL 2794533, at \*6 (noting that a consistency analysis "compares a medical opinion to the evidence"). The Commissioner claims that the ALJ "found that the objective medical evidence was not **consistent** with Dr. Muruganandam's opinion that plaintiff could sit less than two hours in an eight-hour workday and only occasionally reach,

handle, and finger (AR 37, 1687)." Doc. 24 at 14 (emphasis added). However, in his decision the ALJ actually stated: "there is no **support** [for Dr. Muruganandam's opinion that] the Claimant cannot sit more than two hours and would have reaching, handling and fingering limitations." AR 37 (emphasis added). By the ALJ's plain language, this sentence goes to supportability, not consistency. The ALJ is certainly aware of the legal distinction between consistency and supportability. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Next, the ALJ stated: "For example, examinations, including from Dr. Muruganandam, were unremarkable or reflected the Claimant had a normal gait, decreased range of motion of the lumbar spine, elbows and knees, and normal strength of 5/5 throughout. (Exs. 1F/4, 5F/30, 37-38 and 68, 6F/97 and 200, 9F/2 and 15, and 10F/37, 87, and 111)." AR 37. The Commissioner argues that this sentence and string citation also go to a consistency analysis. Doc. 24 at 14. While facially one might expect the string citation to reflect a consistency analysis, as discussed above, this string citation is nonsensical. And again, given the citation, this sentence has no grounding in the actual record. The ALJ's example did not actually compare Dr. Muruganandam's opinions to any evidence. *See Zhu*, 2021 WL 2794533, at *6.

The Court disagrees with the Commissioner that the ALJ discussed the consistency of Dr. Muruganandam's opinions. Even if the two sentences that the Commissioner cites could be considered a consistency analysis, the ALJ did not provide enough information for this Court to follow his reasoning, which is also legal error. *See Jensen*, 436 F.3d at 1165.

Because the ALJ failed to adequately address whether Dr. Muruganandam's opinions were consistent, the matter must be remanded. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Watkins*, 350 F.3d at 1301.

## VII.    Conclusion

The ALJ failed to sufficiently articulate why he found Dr. Muruganandam's opinions unpersuasive. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Therefore, the Court cannot assess whether the ALJ applied the correct legal standards regarding the review of Dr. Muruganandam's medical opinions. The Court does not address plaintiff's other claims of error as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse and Remand (Doc. 19) is GRANTED. The Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.


JENNIFER M. ROZZONI
United States Magistrate Judge
Presiding by Consent